## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| In Re *Ex Parte* Application of Volkswagen AG and Audi AG, | |
| Applicants, | Case No. _____ |
| For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION OF VOLKSWAGEN AG AND AUDI AG FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.     SUMMARY OF ARGUMENT ......................................................................... 2

III.    STATEMENT OF FACTS ............................................................................... 2

        A.      The Parties and NST's Litigations ....................................................... 2

        B.      Applicants' Requested Discovery ......................................................... 6

IV.     ARGUMENT ................................................................................................... 7

        A.      The Present Application Satisfies § 1782's Statutory Requirements ................... 7

        B.      The *Intel* Discretionary Factors Weigh in Favor of Granting the Application ..... 14

                1.      The First *Intel* Factor Favors Discovery from NST and Thomas Loureiro .. 15

                        a. ... NST, a Party to the Foreign Litigations, Cannot be Compelled to Provide the Requested Discovery to the Extent Possible Under § 1782 ................... 15

                        b. Thomas Loureiro, a Non-Party to the UPC Litigations, Likewise Cannot be Compelled to Provide the Requested Discovery to the Extent Possible Under § 1782 ............................................................................................ 18

                2.      The UPC is Receptive to Information Obtained Through United States Discovery ......... 19

                3.      Applicants are Not Attempting to Circumvent Foreign Proof-Gathering Restrictions or Policies ...................................................................... 21

                4.      The Scope of Information Applicants Seek is Commensurate With its Relevance to the UPC Litigations and Will Not Unduly Burden NST ................ 22

V.      CONCLUSION ............................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Akkermansia Co.*,
    No. 22-mc-91577-DJC, 2023 WL 4015992 (D. Mass. May 5, 2023) .................................. 8, 21

*In re ALB-GOLD Teigwaren GmbH*,
    No. 19-MC-1166 (ST), 2020 WL 122943 (E.D.N.Y. Jan. 10, 2020) ...................................... 17

*In re Application of Auto-Guadeloupe Investissement S.A.*,
    No. 12 MC 221(RPP), 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ............................... 16, 17

*Axon Ent. Inc. v. Venjuris PC*,
    No. 6:22-mc-36-PGB-LHP, 2023 WL 1796436 (M.D. Fla. Feb. 7, 2023) ............................ 10

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ............................................................................................... 8, 21

*Clear with Computers, LLC v. Hyundai Motor Am., Inc.*,
    2011 WL 11562328 (E.D. Tex. July 5, 2011) ...................................................................... 22

*Matter of Degens*,
    No. 20-mc-237 (JGK) (RWL), 2020 WL 4252725 (S.D.N.Y. July 24, 2020) ................... 13-14

*Digital Reg. of Texas, LLC v. Adobe Sys., Inc.*,
    No. C 12-1971 CW, 2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) ...................................... 12

*DNA Genotek Inc. v. Spectrum Sols. LLC*,
    No. 21cv516-DMS-LL, 2021 WL 5908985 (S.D. Cal. Dec. 14, 2021) .................................... 9

*In re Eshelman*,
    No. 5:23-mc-80015-EJD, 2023 WL 3361192 (N.D. Cal. May 9, 2023) ................................. 18

*Fleet Connect Sols. LLC v. Waste Connections US, Inc.*,
    No. 2:21-cv-00365-JRG, 2022 WL 2805132 (E.D. Tex. June 29, 2022) ................................. 9

*Gamon Plus, Inc. v. Campbell Soup Co.*,
    No. 1:15-cv-08940, 2022 WL 18284320 (N.D. Ill. May 26, 2022) ........................................ 10

*In re General Electric Co.*,
    No. 1:22-cv-91125-IT, 2022 WL 16720425 (D. Mass. Nov. 4, 2022).......................... 8, 16, 20

*In re Ex Parte Glob. Energy Horizons Corp.*,
    647 F. App'x 83 (3d Cir. 2016) ............................................................................................ 21

*In re Hattori*,
    No. 21-mc-80236-TSH, 2021 WL 4804375 (N.D. Cal. Oct. 14, 2021) ................................. 18

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ........................................................................ 7

*High Point Sarl v. Sprint Nextel Corp.*,
  No. 09-2269-CM-DJW, 2011 WL 3241432 (D. Kan. Jul. 29, 2011) ........................................ 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004).......................................................................... *passim*

*John Deere Ltd. v. Sperry Corp.*,
  754 F.2d 132 (3d Cir. 1985) ........................................................................ 7

*Koninklijke Philips N.V. v. Wangs Alliance Corp.*,
  No. 14-12298-DJC, 2018 WL 283893 (D. Mass. Jan. 2, 2018) ................................................ 9

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
  No. 2:10-cv-216-JRG, 2012 WL 12897921 (E.D. Tex. Oct. 19, 2012) ................................. 22

*Matter of Lufthansa Technick AG*,
  No. C17-1453-JCC, 2019 WL 331839 (W.D. Wash. Jan. 25, 2019) .......................... 15, 17, 20

*Maxell, Ltd. v. Apple Inc.*,
  No. 5:19-cv-00036-RWS, 2021 WL 3012355 (E.D. Tex. Jan. 27, 2021) .............................. 16

*In re Mota*,
  No. MC 19-00369, 2020 WL 95493 (D. Del. Jan. 8, 2020) .................................................... 21

*In re MSTG, Inc.*,
  675 F.3d 1337 (Fed. Cir. 2012) ...................................................................... 11

*In re MTS Bank*,
  No. 17-21545-MC, 2018 WL 3145806 (S.D. Fla. June 27, 2018) ......................................... 18

*Nichiei Intec Co., Ltd.*,
  No. 2:23-mc-00066, 2023 WL 7001666 (W.D. Wash. Oct. 24, 2023) ................................... 18

*In re Nokia Techs. Oy*,
  No. 21mc1487, 2022 WL 788702 (S.D. Cal. Mar. 15, 2022) ................................................ 18

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)......................................................................................... 21

*Palantir Techs., Inc. v. Abramowitz*,
  415 F. Supp. 3d 907 (N.D. Cal. 2019) ..................................................... 14, 15, 17

*In re Porsche Automobile Hldg. SE*,
  No. 19-mc-91129-LTS, 2019 WL 5806913 (D. Mass. Nov. 6, 2019) ......................... 14, 18-20

*In re Application of Pro-Sys Consultants*,
  No. 16-mc-91016, 2016 WL 4154306 (D. Mass. Aug. 5, 2016) ........................................ 17, 20

*In re Ex Parte Application of Qualcomm Inc*.,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ............................................................................. 3, 21

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd*.,
  No. 2:13-cv-213-JRG-RSP, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015) ............................. 12

*Sandra Hldg. v. Al Saleh*,
  No. 18-mc-91406-PBS, 2019 WL 3072197 (D. Mass. July 15, 2019)................................. 7, 21

*In re Schlich*,
  893 F.3d 40 (1st Cir. 2018)......................................................................................... 7, 12-14

*Sciele Pharma, Inc. v. Lupin, Ltd*.,
  No. 09-37, 2013 WL 12161442 (D. Del. Jan. 31, 2013) ........................................................ 11

*In re Thales Dis Ais Deutschland GmbH*,
  No. 3:21-MC-303-S, 2021 WL 7707268 (N.D. Tex. Nov. 5, 2021) ..................... 14, 17, 20, 23

*In re Vahabzadeh*,
  No. 20-mc-80116-DMR, 2020 WL 5095131 (N.D. Cal. Aug. 28, 2020) ........................... 16, 17

*Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp*.,
  No. C 09-05897 RS, 2011 WL 1599646 (N.D. Cal. Apr. 27, 2011) ......................................... 9

*In re Warren*,
  No. 20 Misc. 208 (PGG), 2020 WL 6162214 (S.D.N.Y. Oct. 21, 2020) ................................. 18

*ZF Auto. US, Inc. v. Luxshare, Ltd*.,
  596 U.S. 619 (2022)......................................................................................................... 7-8

*In re Zouzar Bouka*,
  637 F. Supp. 3d 74 (S.D.N.Y. 2022) .............................................................................. 15, 17

**Statutes**

28 U.S.C. § 99 ...................................................................................................................... 8

28 U.S.C. § 1782 ........................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................. 8, 21

Fed. R. Civ. P. 45 ..................................................................................................................... 21

## I.      NATURE AND STAGE OF PROCEEDINGS

Volkswagen AG and Audi AG ("Applicants") respectfully and urgently submit this *Ex Parte* Application for an Order to Obtain Discovery for Use in three related foreign proceedings pursuant to 28 U.S.C. § 1782(a).  Specifically, Applicants seek an order to authorize document and deposition subpoenas to Network System Technologies, LLC ("NST") that will yield evidence highly relevant to NST's lawsuits against Applicants before the Local Division of the Unified Patent Court ("UPC") in Munich, Germany.  Applicants also seek to issue document and deposition subpoenas to Thomas Loureiro, NST's President, who is personally involved in NST's operations, including its litigations.  This discovery will yield evidence highly relevant to NST's lawsuits against Applicants, which is precisely the purpose of § 1782.

NST appears to operate as a patent monetization entity.  Rather than make or sell products or services, NST is believed to simply acquire and litigate patents.  NST began its litigation campaign on December 19, 2022, with three lawsuits in the Eastern and Western Districts of Texas.  On November 14, 2023, NST filed a fourth lawsuit in the Eastern District of Texas.  In total, these four lawsuits by NST targeted thirteen companies and asserted six U.S. patents.  Applicants were originally named as defendants in one of these E.D. Tex. cases, but they were voluntarily dismissed by NST on April 5, 2023, before any discovery occurred.

Beyond its U.S. litigations, NST has now expanded its campaign to an international scale.  On December 29, 2023, NST filed Case Nos. ACT_597691/2023 and ACT_597692/2023 in the UPC against Applicants as well as Texas Instruments Inc. and Texas Instruments Deutschland GmbH (the latter two, collectively, "TI").  Ex. E, Ex. F.  NST filed a third UPC complaint against the same entities in Case No. ACT_597693/2023 on January 2, 2024.  Ex. G.  Mr. Loureiro is one of NST's two principals and is personally involved in NST's operations, as discussed below.

Applicants are now forced to defend themselves in these UPC litigations without the

1

benefit of critical discovery.  At the UPC, Applicants cannot compel the document and deposition discovery to the extent requested here.  Applicants thus seek targeted discovery pursuant to § 1782 so that they can present the UPC with important evidence.  This type of discovery is routinely granted under § 1782 to promote international comity and avoid injustices arising from inadequate access to evidence.

## II.  SUMMARY OF ARGUMENT

1.      The present Application satisfies § 1782's statutory requirements because NST and Thomas Loureiro are both found within this District, the information sought is "for use" in the foreign proceedings, and Applicants are interested entities—indeed, parties in each of the foreign proceedings; and

2.      The applicable discretionary factors favor granting the Application because Thomas Loureiro is a non-party to the UPC cases and NST, while of course a party, cannot be compelled to provide discovery to the extent sought here in those foreign proceedings; the UPC is receptive to the information sought here through discovery in the United States; Applicants are not attempting to circumvent proof-gathering restrictions or policies in the foreign proceedings; and the information sought is relevant and not "unduly intrusive or burdensome" in scope.

## III.  STATEMENT OF FACTS

### A.      The Parties and NST's Litigations

Volkswagen AG ("VW") is a corporation organized under the laws of Germany with its principal place of business in Wolfsburg, Germany.  Audi AG ("Audi") is a corporation organized under the laws of Germany with its principal place of business in Ingolstadt, Germany.

NST is a Delaware limited liability company and maintains its principal place of business at 533 Congress Street, Portland, Maine 04101.  Ex. H at 1.  NST is amenable to service via its registered agent in this state, Corporation Service Company, located at 45 Memorial Circle,

Augusta, Maine 04330.  *Id*.

NST has two known principals.  Thomas Loureiro is the entity's President.  Ex. I.  He has a background in "Intellectual Property Licensing and Strategy."  *Id*.  Mr. Loureiro is believed to reside at 23 Cleeve Street, Portland, Maine 04101-2501.  Ex. J at 2; Ex. K at 2.  Warren Hurwitz, who resides in New York, is also a principal of NST although his title is unknown.[1]  Ex. Ex. K at 2; Ex. L at 3:18-20.  In addition to their work at NST, Mr. Hurwitz and Mr. Loureiro are also both principals of an entity called "Innovative Foundry Technologies."  Exs. I, M.  NST's European litigation counsel in the UPC proceedings recently made a public post thanking "Thomas Loureiro and Warren Hurwitz for the collaboration and the great #support my team and I are receiving" in NST's litigations.  Ex. N.  The post also touts NST's goals of "winning an #injunction" and seeing that "#damage awards will see a renaissance with the UPC."  *Id*.

NST's litigation campaign began in the Eastern and Western Districts of Texas.  The four cases NST has filed there are summarized below.

---

[1] In parallel with this Application, Applicants are also seeking § 1782 discovery from Mr. Hurwitz.  *In re Ex Parte Application of Volkswagen AG and Audi AG*, No. Misc. 24 0832 (E.D.N.Y.).

| Court | Case Number | Filing Date | Defendants |
|---|---|---|---|
| E.D. Tex. | 2-22-cv-00481 | December 19, 2022 | Lenovo Group Limited; OnePlus Technology (Shenzhen) Co., Ltd.; Samsung Austin Semiconductor, LLC; Samsung Electronics America, Inc. f/k/a Samsung Telecommunications America LLC; Samsung Electronics Co., Ltd.; Samsung Semiconductor, Inc. |
| E.D. Tex.[2] | 2-22-cv-00482 | December 19, 2022 | Audi AG; Volkswagen AG; Ford Motor Company; Texas Instruments Incorporated |
| W.D. Tex. | 1-22-cv-01331 | December 19, 2022 | Arteris, Inc.; Qualcomm Incorporated; Qualcomm Technologies, Inc. |
| E.D. Tex. | 2-23-cv-00167 | April 11, 2023 | Lenovo Group Limited |

*Table 1: NST's Texas Litigations*

In each of these four cases, NST asserts six patents: U.S. Patent Nos. 7,366,818, 7,373,449, 7,594,052, 7,769,893, 8,072,893, and 8,086,800.  NST generally alleges that various System-on-Chip (SoC) products infringe the patents.  Ex. O ¶ 17.  As NST acknowledges, however, these patents do not arise from any innovation by NST itself—instead, they "result from extensive research and development by Philips Semiconductors, a subsidiary of Koninklijke Philips N.V. ('Philips') that included VLSI Technology, Inc., which Philips acquired in 1999." *Id.* ¶ 19.  Each patent was then allegedly assigned from Philips to NST.  *Id.*

Although much of the discovery in the Texas litigations is non-public, public filings from those cases shed light on what discovery has been requested.  For example, it is apparent that at least TI has requested discovery from NST's "two principals."  Ex. L at 96:22-24; *id.* at 97:5-6. Indeed, NST confirmed that it "will collect and produce emails involving NST's executives, agents, and predecessors-in-interest."  Ex. P at 2.  It is also public record that NST provided an

---

[2] As noted above, Applicants were voluntarily dismissed from this case before any discovery occurred.

interrogatory response containing a "108-page chart regarding" "licenses/agreements." *Id.* at 3. NST confirmed that, among these agreements, there are agreements with TI customers including "Siemens AG; Robert Bosch GmbH; Hitachi Ltd.; Microsoft Corporation; NEC Corporation; Sony Corporation; and JVC Kenwood Holdings, Inc." *Id.*

NST's litigation campaign expanded internationally on December 29, 2023, and again on January 2, 2024, when it filed its three UPC litigations against Applicants. These cases are summarized below.

| Court | Case Number | Filing Date | Defendants |
|-------|-------------|-------------|------------|
| UPC | ACT_597691/2023 | December 29, 2023 | Audi AG; Volkswagen AG; Texas Instruments Inc.; Texas Instruments Deutschland GmbH |
| UPC | ACT_597692/2023 | December 29, 2023 | Audi AG; Volkswagen AG; Texas Instruments Inc.; Texas Instruments Deutschland GmbH |
| UPC | ACT_597693/2023 | January 2, 2024 | Audi AG; Volkswagen AG; Texas Instruments Inc.; Texas Instruments Deutschland GmbH |

*Table 2: NST's UPC Litigations*

Each UPC case asserts one European patent—Case No. ACT_597691/2023 involves European Patent No. 1,552,669, Case No. ACT_597692/2023 involves European Patent No. 1,875,683, and Case No. ACT_597693/2023 involves European Patent No. EP 1,552,399. Ex. E, Ex. F, Ex. G. These three European patents are part of the same patent family as the above-mentioned U.S. patents, and in these UPC cases NST likewise asserts that certain SoC products infringe the European patents.

The near-term deadlines in the above UPC cases are as follows:

| Deadline | ACT_597691/2023 EP 1,552,669 | ACT_597692/2023 EP 1,875,683 | ACT_597693/2023 EP 1,552,399 |
|---|---|---|---|
| **Preliminary Objection according to Rule 19.1 Rules of Procedure (RoP)** | March 3, 2024 | March 3, 2024 | March 3, 2024 |
| **Submission of Statement of Defense** | May 3, 2024 | May 3, 2024 | May 3, 2024 |

*Table 3: Deadlines in UPC Litigations*

### B.    Applicants' Requested Discovery

Applicants seek specific information from NST and Thomas Loureiro that is highly relevant to NST's litigations against Applicants at the UPC.  *See* Müller-Stoy Decl., ¶¶ 15-29. However, the UPC proceedings do not provide discovery processes comparable to those available in U.S. courts, and Applicants cannot compel production of highly relevant documents and testimony to the extent possible under 28 U.S.C. § 1782 from NST or Thomas Loureiro in those proceedings.  *Id.*, ¶¶ 14, 16, 24, 30-31.  Applicants accordingly seek targeted discovery here to enable the UPC to adjudicate the cases there based on complete factual records.  To this end, Applicants attach as Exhibits A and B here subpoenas seeking specified documents and deposition testimony from NST, and Exhibits C and D likewise seek similar discovery from Thomas Loureiro. The types of documents sought in the document subpoenas are largely mirrored in the proposed deposition topics to NST, and can be classified as:

- **Request for Production Nos. 1, 5, 6, 8, and 15-17**: NST's litigation positions and related information bearing on issues of patent claim scope, alleged infringement,

and invalidity (*see also* Deposition Topic Nos. 1, 3-5, 7, and 8);

- **Request for Production Nos. 2-4 and 9**: NST's ownership and standing to sue in the UPC (*see also* Deposition Topic Nos. 2 and 9);

- **Request for Production Nos. 7 and 10-13**: NST's claims for damages based on alleged infringement, and potential defenses such as license and implied license (*see also* Deposition Topic Nos. 6 and 10-12);

- **Request for Production Nos. 14, 18, and 19**: NST's status as a non-practicing, patent monetization entity, and ability to post a bond or satisfy a judgement of fees and costs (*see also* Deposition Topic Nos. 13-16).

This information has not been produced by NST in the UPC litigations, yet it is critical for Applicants to be able to present a full and fair defense, for the UPC to consider a complete factual record, and for the additional reasons explained below.  *See* Müller-Stoy Decl., ¶¶ 15-29.

**IV.    ARGUMENT**

**A.    The Present Application Satisfies § 1782's Statutory Requirements**

Section 1782, entitled "Assistance to Foreign and International Tribunals and to Litigants Before Such Tribunals," authorizes federal district courts to order discovery to assist applicants, such as Applicants here, in gathering evidence for use in foreign tribunals.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The purpose of this statute is to enable a party in foreign litigation to "seek discovery relating to that litigation in a federal district court, and, in the discretion of that court," to "obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad."  *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (citations omitted).  Section 1782 aims to "provid[e] efficient assistance to participants in international litigation."  *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018) (quoting *Intel*, 542 U.S. at 252); *see also John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("28 U.S.C.

7

§ 1782 reflects a determination on the part of Congress to broaden the scope of international judicial assistance afforded by the federal courts.").

Courts may grant a § 1782 application when the following statutory requirements are satisfied: (1) the person from whom discovery is sought "resides or is found" in the district of the district court to which the application is made, (2) the discovery is "for use in a proceeding before a foreign or international tribunal," and (3) the application is made by an "interested person." *Schlich*, 893 F.3d at 46 (citing 28 U.S.C. § 1782(a)). Here, Applicants' request for discovery meets each of these statutory requirements.

First, Applicants seek discovery from a company with a principal place of business in Maine and an individual residing in Maine. NST's principal place of business is located at 533 Congress Street Portland, Maine 04101. Ex. H at 1, Ex. K at 1. Thus, NST "resides" in the District of Maine for § 1782 purposes. *See Sandra Hldg. Ltd. v. Al Saleh*, No. 18-mc-91406-PBS, 2019 WL 3072197, at *2 (D. Mass. July 15, 2019) (entity found to "reside in" district where it has "principal place of business"); 28 U.S.C. § 99 ("Maine constitutes one judicial district."). Thomas Loureiro is believed to reside at 23 Cleeve Street, Portland, Maine 04101-2501. Ex. J at 2; Ex. K at 2.

Second, the documents and deposition testimony requested are "for use" in NST's UPC litigations before the UPC Local Division in Munich, Germany. *See* Müller-Stoy Decl., ¶¶ 12, 15-29. The Supreme Court recently explained that the term "tribunal" in § 1782(a) is not limited to a "court" per se, but instead is "used more broadly to refer to any adjudicatory body." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 627-28 (2022). A "'tribunal' is best understood as an adjudicative body that exercises governmental authority." *Id*. at 628. "A tribunal is 'international' when it involves or is of two or more nations, meaning that those nations have imbued the tribunal

with official power to adjudicate disputes." *Id*. at 630.  The UPC is precisely such an international tribunal—indeed, a court—because it is grounded in inter-governmental authority and is imbued with the power to adjudicate the merits of patent disputes, including deciding issues of infringement, validity, enforceability, and remedies, Art. 1, 32 Agreement on a Unified Patent Court (UPCA).  *See* Müller-Stoy Decl., ¶ 13.  Accordingly, Applicant's request also comports with the "foreign or international tribunal" prong of § 1782.

Third, Applicants' proposed discovery is "for use" in the UPC litigations—specifically, for use by Applicants in presenting defenses against, and rebutting, NST's claims in those litigations. The First Circuit considers the "for use" requirement of § 1782 based on whether the proposed discovery has "relevance to the foreign proceedings."  *General Elec*., 2022 WL 16720425, at *3. A § 1782 applicant is "not required to show that the information they seek would be discoverable (or admissible) in the [foreign] litigation in order to satisfy the ["for use"] prong."  *Minis v. Thomson*, No. 14-91050-DJC, 2014 WL 1599947, at *2 (Apr. 18, 2014).  Instead, discovery under § 1782 follows the same rules that ordinarily govern discovery in district court litigation.  *See In re Akkermansia Co*., No. 22-mc-91577, 2023 WL 4015992, at *3-4 (D. Mass. May 5, 2023) (applying Fed. R. Civ. P. 26 to discovery under § 1782); *see also In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").

Here, Applicants' requested discovery has clear relevance to multiple issues in the foreign proceedings.  For example, Request for Production No. 1 addresses "prior art" to NST's asserted European patents and "NST's knowledge of" such prior art.  Ex. A, Ex. C.  Prior art in NST's possession is clearly relevant to the issue of patent invalidity, and NST's knowledge of such prior

art bears on the reasonableness of its decision to bring its lawsuits in the UPC in the first place. *See* Müller-Stoy Decl., ¶ 21.   Request for Production Nos. 5, 6, and 8 similarly address NST's litigation positions and their merits, including any "interpretation of the claims" in its patents; "analyses of the alleged infringement" of its patents; the "specific Accused Products" at issue, including their "technical commonalities" and "technical differences."  Ex. A, Ex. C.  Determining the scope of patent claims is needed before any assessment of infringement or validity can occur. *See* Müller-Stoy Decl., ¶ 22.   Likewise, assessments of infringement and the technical characteristics of the accused products here bear directly on the issue of infringement.  *See id.*, ¶ 23.  Request for Production Nos. 15-17 similarly address NST's inspection and analysis of the accused products at issue in the UPC litigations, and thus bear directly on issues of claim interpretation and evidence of alleged infringement.  *Id.*  All of these topics are highly relevant to core issues in the UPC litigations.  *See also generally Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, No. 2:21-cv-00365-JRG, 2022 WL 2805132, at *2 (E.D. Tex. June 29, 2022) (compelling production of patentee's infringement contentions for the same or related patents); *DNA Genotek Inc. v. Spectrum Sols. LLC*, No. 21cv516-DMS-LL, 2021 WL 5908985, at *2-4 (S.D. Cal. Dec. 14, 2021) (compelling production of materials from prior arbitration that may bear on claim construction, infringement, and validity issues); *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-12298-DJC, 2018 WL 283893, *5 (D. Mass. Jan. 2, 2018) (compelling production of invalidity claim charts and invalidity contentions from previous litigations of patentee); *Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, No. C 09-05897 RS, 2011 WL 1599646, *2-3 (N.D. Cal. Apr. 27, 2011) (compelling patentee to provide actual dates and circumstances of when it learned of prior art).

Applicants' proposed Request for Production Nos. 2-4 and 9 are also relevant because they

focus on NST's ownership and standing to sue in the UPC.  Ex. A, Ex. C.  In particular, Request for Production Nos. 2-4 address NST's decision to opt-out its asserted patents from the jurisdiction of the UPC and then withdraw that opt-out.  Ex. A, Ex. C.  This is relevant because if NST's opt-out maneuvering was erroneous or unsupported, NST may lack standing to sue.  *See* Müller-Stoy Decl., ¶ 18.  Similarly, Request for Production No. 9 relates to NST's purported purchase and ownership of the asserted patents, and whether other entities (e.g., Philips) may retain interests in the patents that could defeat NST's standing to sue.  *See id*., ¶¶ 15 & 18-20.  These requests are thus plainly relevant as well.  *See also generally Gamon Plus, Inc. v. Campbell Soup Co.*, No. 1:15-cv-08940, 2022 WL 18284320, at *2 (N.D. Ill. May 26, 2022) (compelling production of any third party's financial interest in action, including relevant litigation funding or contingency fee agreements, as potentially relevant to patentee's standing and damages issues); *Axon Ent. Inc. v. Venjuris PC*, No. 6:22-mc-36-PGB-LHP, 2023 WL 1796436, at *7 (M.D. Fla. Feb. 7, 2023) (compelling production of "Intellectual property agreements regarding ownership, transfer, assignment, licensing, royalties").

Because NST seeks damages in the UPC litigations (*see* Ex. E at 60-61; Ex. F at 60-61; Ex. G at 88-89), Applicants' proposed Request for Production Nos. 7 and 10-13 are also highly relevant.  In particular, Request for Production No. 7 focuses on "valuations, or damages associated with alleged infringement, of" NST's patents, and Request for Production Nos. 10-13 address the patents' transfer of "rights" and any "assignment" histories, as well as their "negotiation history," any "license agreements," and any "settlement agreements," all of which is directly relevant to the computation of alleged damages in the UPC cases.  *See* Müller-Stoy Decl., ¶¶ 15, 25, 26.  These materials are also highly relevant to potential defenses such as license and implied license, insofar as entities that may supply components or technologies to Applicants may

have a license to the asserted patents.  *See id.*, ¶¶ 25-26.  Indeed, this is a critical issue warranting

discovery, since public records in NST's Texas litigations show that entities such as Siemens AG,

Robert Bosch GmbH, Hitachi Ltd., Microsoft Corporation, NEC Corporation, Sony Corporation,

and JVC Kenwood Holdings, Inc. may potentially have licenses to NST's patents.  Ex. P at 3.  In

NST's E.D. Tex. litigation, TI explained: "We have only come to find out, after we filed the

motion, that there are a number of entities out there who have licenses to the patents-in-suit.  And

it turns out that many of those entities are TI customers."  Ex. L at 80:22-25.  To the extent any of

these entities supply products to Applicants, Applicants may correspondingly have a license or

implied license defense in the UPC.  Accordingly, each of these discovery topics is relevant and

proper.  *See also generally In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (licensing

negotiations discoverable); *Sciele Pharma, Inc. v. Lupin, Ltd.*, No. 09-37, 2013 WL 12161442, at

*2 (D. Del. Jan. 31, 2013) (license agreements are discoverable); *High Point Sarl v. Sprint Nextel*

*Corp.*, No. 09-2269-CM-DJW, 2011 WL 3241432, *5 (D. Kan. Jul. 29, 2011) (footnotes omitted)

("Other courts have found a patent holder's correspondence with third parties related to licensing

negotiations to be relevant in patent infringement suits.  Courts have found it relevant to

ascertaining the extent of liability, formulating an appropriate litigation strategy, infringement and

validity of the patents at issue, whether prior licenses are comparable, and calculation of reasonable

royalty.").

Request for Production Nos. 14, 18, and 19 are relevant to NST's status as a non-practicing,

patent monetization entity, and its ability to post a bond or satisfy a judgement of fees and costs in

the UPC litigations.  The assessment of whether NST is entitled to injunctive relief bears, in part,

on the relationship between the parties to the UPC cases, including whether or not they compete

in the market.  *See* Müller-Stoy Decl., ¶ 27.  If Applicants can prove a lack of competition between

them and NST, this may help defeat any injunction request by NST.  *See id*.  Similarly, these requests address NST's financing, investment, and turnover, which are highly relevant to NST's ability to post a bond (e.g., for costs or if it seeks the enforcement of an injunction in the UPC cases) or pay Applicants' fees and costs if Applicants prevail in the UPC cases.  *See id*., ¶¶ 28-29.  Indeed, the UPC allows for the prevailing party to recover the costs of litigation under Art. 69, 70 UPCA and R. 150-157 of the Rules of Procedure (RoP) of the UPC.  *See id*. ¶ 29.  In addition, pursuant to R. 158.1 RoP, a party may file an application for security for costs at any time during the proceedings.  *See id*.  Accordingly, these requests are all highly relevant to the UPC cases too.  *See also generally Digital Reg. of Texas, LLC v. Adobe Sys., Inc*., No. C 12-1971 CW, 2014 WL 4090550, at \*12 (N.D. Cal. Aug. 19, 2014) (patentee's "status as a non-practicing entity is relevant to damages and the *Georgia-Pacific* [reasonable royalty] factors"); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd*., No. 2:13-cv-213-JRG-RSP, 2015 WL 627430, at \*1 (E.D. Tex. Jan. 31, 2015) (precluding pejorative evidence about patentee, but permitting evidence that patentee "is a patent assertion entity that does not manufacture or sell products in this field" and "characterizing Plaintiff as an entity that licenses and litigates, so long as those terms are used in conjunction with one another").

Lastly, the material Applicants seek from NST and Thomas Loureiro is not privileged.  *See Schlich*, 893 F.3d at 46 (Section 1782 allows discovery when "material sought is not protected by 'any legally applicable privilege.'"); *Matter of Degens*, No. 20-mc-237 (JGK) (RWL), 2020 WL 4252725, at \*6 (S.D.N.Y. July 24, 2020) (allowing § 1782 discovery from two law firms, despite privilege concerns, since any such concerns "can easily be addressed through privilege logs").  NST's litigation positions (e.g., submissions to courts) and related information bearing on issues of patent claim scope, alleged infringement, and invalidity are not privileged (*see* Request for

Production Nos. 1, 5, 6, 8, and 15-17; *see also* Deposition Topic Nos. 1, 3-5, 7, and 8); agreements bearing on NST's ownership of its patents and standing to sue are not privileged (*see* Request for Production Nos. 2-4; *see also* Deposition Topic Nos. 2 and 9); NST's claims for damages based on alleged infringement (e.g., expert opinions and court submissions) and agreements with third-parties (*see* Request for Production Nos. 7 and 10-13; *see also* Deposition Topic Nos. 6 and 10-12) are not privileged; and NST's status as a non-practicing, patent monetization entity, and ability to post a bond or satisfy a judgement of fees and costs (*see* Request for Production Nos. 14, 18, and 19; *see also* Deposition Topic Nos. 13-16) is a matter of fact and not privileged.  Of course, insofar as NST or Thomas Loureiro may have a genuinely privileged document responsive to these topics—which Applicants do not seek, in any event—they may make a particularized objection after receiving Applicants' subpoenas.

For at least these reasons, Applicants are "interested" persons to the UPC litigations, the information they seek is highly relevant to those proceedings, and is "for use" in those proceedings. *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among . . . the 'interested person[s]' who may invoke § 1782.").  The present Application therefore satisfies the statutory requirements for a § 1782 application.

### B.    The *Intel* Discretionary Factors Weigh in Favor of Granting the Application

In *Intel*, the Supreme Court provided a non-exhaustive list of factors that district courts can consider when deciding whether to grant Section 1782 applications: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise

"unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *see also Schlich*, 893 F.3d at 47 (applying *Intel* factors to determine whether § 1782 application should be granted). In this case, all four factors favor granting Applicants' requested discovery.

### 1. The First *Intel* Factor Favors Discovery from NST and Thomas Loureiro

#### a. NST, a Party to the Foreign Litigations, Cannot be Compelled to Provide the Requested Discovery to the Extent Possible Under § 1782

The first *Intel* factor generally favors applications seeking discovery from non-parties to a foreign tribunal because such non-parties' evidence, "available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. That is, if the respondent is a party to the foreign proceeding, the foreign tribunal itself may potentially "order them to produce evidence." *Schlich*, 894 F.3d at 47 (quoting *Intel*, 542 U.S. at 264). But courts recognize that this *Intel* factor also weighs in favor of granting § 1782 discovery of *parties* to foreign proceedings when the foreign tribunal does not allow the discovery sought under § 1782. "Whether the target of the subpoena is a participant in the foreign action, however, is only one part of the inquiry, because the critical question is whether the information targeted is within the foreign tribunal's jurisdictional reach." *In re Porsche Automobile Hldg. SE*, No. 19-mc-91129-LTS, 2019 WL 5806913, at *6 (D. Mass. Nov. 6, 2019). Indeed, "there is no rule that § 1782 applications can only be granted where the party from whom discovery is sought is not a party to the foreign proceeding." *In re Thales Dis Ais Deutschland GmbH*, No. 3:21-MC-303-S, 2021 WL 7707268, at *2 (N.D. Tex. Nov. 5, 2021) (quoting *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 912 (N.D. Cal. 2019)).

NST is a party to the UPC litigations it filed against Applicants. But, critically, the discovery Applicants seek here is not available of right and to a full extent in the UPC—from NST or otherwise. *See* Müller-Stoy Decl., ¶¶ 14, 16, 24, 30-31. Under UPC rules, it is possible to

request an order to produce evidence pursuant to art. 59 UPCA, R. 190 Rules of Procedure (RoP). *See id*., ¶ 31.  It is assumed that the evidence must establish a certain probability or sufficient probability of patent infringement (BeckOK PatR/Kiefer, 30. Ed. 15.7.2023, UPCA Art. 59 marginal number 19).  *See id*.  In addition, Art. 59 para. 1 and R. 190 para. 1 of the UPC Rules provide that the applicant must specify the evidence that is in the possession of the opposing party or a third party.  *See id*.  In this context, the applicant is also obliged to state the reasons why they suspect that the opposing party or third party possesses the evidence in question and the extent to which the evidence is suitable and necessary to substantiate the allegation of infringement (BeckOK PatR/Kiefer, 30. Ed. 15.7.2023, UPCA Art. 59 marginal number 10).  *See id*. Accordingly, the requirements as to specification of evidence are strict and much narrower than for discovery in U.S. proceedings.  *See id*., ¶¶ 14, 16, 24, 30-31.  The UPC does not have the authority to investigate, or to order the investigation of, facts or documents not already specified by the parties to the action.  *See id*.  Therefore, obtaining a full overview of the likely relevant evidence is only possible by way of discovery proceedings in accordance with § 1782. *See id*.

Here, even though NST is a party to its UPC litigations, the UPC "cannot order the discovery sought here" in an enforceable manner, and this fact makes the first *Intel* factor favor granting Applicants' request for discovery.  *Palantir Techs.*, 415 F. Supp. 3d at 913.  Because "the discovery procedures available to [Applicants] in the pending proceedings are insufficient to procure the requested discovery," and "although [NST] is a participant in the pending proceedings, the lack of effective discovery mechanisms available to [Applicants] in those [proceedings] weighs in favor of allowing proceedings to obtain the discovery material via § 1782." *Matter of Lufthansa Technick AG*, No. C17-1453-JCC, 2019 WL 331839, at *2 (W.D. Wash. Jan. 25, 2019).  Where,

as here, there are "apparent limitations in obtaining additional discovery in the [foreign proceedings], the first factor weighs in favor of granting the application." *See In re Zouzar Bouka*, 637 F. Supp. 3d 74, 88 (S.D.N.Y. 2022), *modified in part* 654 F. Supp. 3d 283 (S.D.N.Y. 2023) (granting § 1782 request even though one respondent was party to foreign proceedings); *see also Maxell, Ltd. v. Apple Inc.*, No. 5:19-cv-00036-RWS, 2021 WL 3012355, at *3 (E.D. Tex. Jan. 27, 2021) (despite Apple's party-status in German litigation, finding that "[h]ere, where no avenues are available in the German courts through which Maxell may compel Apple to produce the requested materials, this factor weighs in favor of amending the protective order to allow Maxell to use materials already in its possession in the German Proceedings."); *In re Application of Auto-Guadeloupe Investissement S.A.*, No. 12 MC 221(RPP), 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012) (finding that *Intel* factor one favors discovery where, despite respondent being party to foreign proceeding, the materials sought by applicant "would be unavailable but for § 1782 assistance.").

Moreover, the UPC lacks jurisdiction over witnesses located in the U.S. and cannot compel a production of documents located in the U.S.; while it can order a production of such evidence, the UPC has no means to compel production if the order is disobeyed. *See* Müller-Stoy Decl., ¶¶ 14, 16, 24, 30-31. Particularly, under UPC law, lacking case law to the contrary, the UPC does not have authority to compel a foreign national residing or located outside a UPCA member state to appear in a UPC court to provide testimony (Cf. as well Tilman/Plasmann/v. Falck/Dorn, EPGÜ, 1. Ed. 2024, Art. 53 para. 2). *See id*. Indeed, where the jurisdiction of the foreign tribunal does not extend to documents or witnesses located in the United States, this factor further favors granting § 1782 discovery. *In re General Electric Co.*, No. 1:22-cv-91125-IT, 2022 WL 16720425, at *5 (D. Mass. Nov. 4, 2022); *Thales Dis Ais Deutschland*, 2021 WL 7707268, at

*2; *see also In re Vahabzadeh*, No. 20-mc-80116-DMR, 2020 WL 5095131, at *3 (N.D. Cal. Aug. 28, 2020) ("[T]he documents Petitioner seeks to obtain from Mostafa in California are outside the reach of the French court's jurisdiction" and "[t]hus, the first factor weighs in Petitioner's favor" despite respondent's party-status in foreign litigation); *In re ALB-GOLD Teigwaren GmbH*, No. 19-MC-1166 (ST), 2020 WL 122943, at *5 (E.D.N.Y. Jan. 10, 2020) ("So even though Interpage is a participant, the Swiss Federal Supreme Court cannot compel the discovery that is sought in this application," thus favoring granting § 1782 discovery).

Accordingly, because the document and deposition discovery Applicants seek here is not something they can compel NST to provide in the UPC litigations to the extent possible under § 1782, the first *Intel* factor favors granting this Application despite NST's party-status in those litigations. *Thales Dis Ais Deutschland*, 2021 WL 7707268, at *2 (granting § 1782 discovery despite respondent's party-status); *Palantir Techs.*, 415 F. Supp. 3d at 912 (same); *Lufthansa Technick*, 2019 WL 331839, at *2 (same); *Bouka*, 637 F. Supp. 3d at 88 (same); *Vahabzadeh*, 2020 WL 5095131, at *3 (same); *ALB-GOLD Teigwaren*, 2020 WL 122943, at *5 (same); *Auto-Guadeloupe Investissement*, 2012 WL 4841945, at *5 (same).

### b. Thomas Loureiro, a Non-Party to the UPC Litigations, Likewise Cannot be Compelled to Provide the Requested Discovery to the Extent Possible Under § 1782

For all of the reasons discussed above with regard to NST, Applicants' requested discovery from Thomas Loureiro should be granted *even if* he was a party to the UPC litigations. *See supra* § IV.B.1.b. The UPC does not allow Applicants to compel such evidence to the extent possible under § 1782 from party-litigants. *See* Müller-Stoy Decl., ¶¶ 14, 16, 24, 30-31. Thus, § 1782 is Applicants' only avenue to present such highly-relevant evidence to the UPC.

In addition to these reasons, Thomas Loureiro is *not* a party to the UPC litigations. Only NST itself, Applicants, and TI are parties in those proceedings. Ex. E at 1, Ex. F at 1, Ex. G at 1.

18

Courts regularly hold that a respondent's status as a non-participant in foreign litigation supports granting § 1782 discovery. *See Pro-Sys Consultants*, 2016 WL 4154306, at *2 ("The first factor, whether the deponent is a participant in the foreign litigation, weighs in favor of the applicants because Mr. Ray Ozzie . . . is not a litigant and therefore cannot be required to give testimony in Canada."); *see also Porsche*, 2019 WL 5806913, at *6 ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.") (quoting *Intel*, 542 U.S. at 264). Accordingly, Applicants' request for § 1782 discovery from Mr. Loureiro should be granted for these additional reasons as well, consistent with *Intel*'s first factor.

### 2. The UPC is Receptive to Information Obtained Through United States Discovery

A decision to grant a § 1782 application should "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782, courts tend to err on the side of permitting discovery." *In re Eshelman*, No. 5:23-mc-80015-EJD, 2023 WL 3361192, at *3 (N.D. Cal. May 9, 2023); *see also In re Hattori*, No. 21-mc-80236-TSH, 2021 WL 4804375, at *4 (N.D. Cal. Oct. 14, 2021) (same); *In re MTS Bank*, No. 17-21545-MC, 2018 WL 3145806, at *7 (S.D. Fla. June 27, 2018) (same); *Nichiei Intec Co., Ltd.*, No. 2:23-mc-00066, 2023 WL 7001666, at *3 (W.D. Wash. Oct. 24, 2023) (same); *In re Warren*, No. 20 Misc. 208 (PGG), 2020 WL 6162214, at *6 (S.D.N.Y. Oct. 21, 2020) (same). "When the parties do not provide evidence showing that a foreign court would reject evidence obtained under Section 1782, courts tend to allow discovery." *In re Nokia Techs. Oy*, No. 21mc1487, 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022).

19

While there is no known UPC decision yet addressing the issue of § 1782 discovery specifically (the UPC only started its operations on June 1, 2023), there is caselaw of the German Federal Supreme Court that has confirmed that the enforcement of a U.S. judgment in Germany is not precluded due to it being based on evidence obtained in discovery proceedings in the United States (Federal Supreme Court, decision of 4 June 1992, NJW 1992, 3096, 3099, holding that the reliance on evidence obtained through discovery does not violate German public order). *See* Müller-Stoy Decl., ¶¶ 33-35. Pursuant to art. 24 e) UPCA, national law is a source of law for the UPC. *See id*. Therefore, it can be assumed that the UPC would be receptive to U.S. discovery, too. *See id*. The German Federal Supreme Court's holding has been interpreted in German literature as supporting the submission of evidence obtained under Section 1782 discovery proceedings. *See id*. Once submitted in the German Proceedings, the court will then consider the documents or testimony. *See, e.g.*, *Schönknecht*, Beweisbeschaffung in den USA zur Verwendung in deutschen Verfahren, GRURint 2011, 1000, 1007 with reference to *Eschenfelder*, Verwertbarkeit von Discovery-Ergebnissen in deutschen Zivilverfahren, RIW 2006, 443,447; *see also Müller-Stoy,* Grundzüge des U.S.-amerikanischen Patentverletzungsverfahrens, GRUR Int. 2005, 558, 563). *See id*. It can be assumed that the UPC will pursue a similar approach as the UPC is formally equivalent to a national court of an EU member state. Furthermore, there is no law, rule of evidence, or rule of procedure in the Rules of Procedure of the UPC that prohibits a party from seeking discovery pursuant to § 1782, and then using any evidence obtained through a § 1782 application in UPC court proceedings. *See id*.

Thus, the second *Intel* factor also favors this Court granting this Application.

### 3.    Applicants are Not Attempting to Circumvent Foreign Proof-Gathering Restrictions or Policies

The inquiry under this third *Intel* factor "boils down to whether the discovery is being sought in bad faith." *Porsche*, 2019 WL 5806913, at *8 (citing *Chevron Corp. v. Sheffiz*, 754 F. Supp. 2d 254, 262 (D. Mass. 2010).  It is in this context that courts should consider whether a petitioner is seeking "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  Absent a "clear" statement from the UPC that § 1782 discovery would circumvent a rule or policy, courts find that this factor favors granting discovery. *See Porsche*, 2019 WL 5806913, at *8 (citing *In re Application of Pro-Sys Consultants*, No. 16-mc-91016, 2016 WL 4154306, at *2 (D. Mass. Aug. 5, 2016)).  Here Applicants demonstrate that the UPC will accept evidence from the discovery Applicants seek. *See supra* § IV.B.2; Müller-Stoy Decl., ¶¶ 33-35.

The fact that Applicants' requests are made in good faith and do not seek to circumvent proof-gathering restrictions or policies is evidenced by the fact—as discussed above—that the UPC is receptive to evidence from § 1782 discovery. *See id*.  Courts routinely find that this third *Intel* factor is satisfied under these circumstances. *See Thales Dis Ais Deutschland*, 2021 WL 7707268, at *3 ("Regarding the third discretionary factor, nothing suggests that the Petition conceals an attempt to circumvent proof-gathering restrictions or other policies, as evidenced by the likelihood that German courts will accept discovery obtained using § 1782 assistance.").  Indeed, courts find that where the requested discovery is "relevant" to the foreign litigation, the third *Intel* factor is satisfied. *Lufthansa Technick*, 2019 WL 331839, at *3.

To be sure, the fact that Applicants' requested discovery is not fully available in the UPC does not constitute circumvention.  Indeed, this is why Applicants' request under § 1782 is appropriate in the first place.  Courts have recognized precisely this need. *See General Electric*,

21

2022 WL 16720425, at *7 ("GE may be seeking documents or witnesses because it cannot do so under German discovery procedures, but that does not mean that GE is acting in bad faith in requesting such discovery in its Application").  As demonstrated above, Applicants' requested discovery is directly relevant to NST's UPC litigations, and Applicants seek in good faith to provide a full and substantiated factual record to the UPC so that issues of standing, infringement, validity, enforceability, and remedies can be properly adjudicated.  *See* Müller-Stoy Decl., ¶ 13.

For all these reasons, *Intel* factor three also favors granting this Application.

### 4. The Scope of Information Applicants Seek is Commensurate With its Relevance to the UPC Litigations and Will Not Unduly Burden NST

Discovery under § 1782 is as broad as discovery under the Federal Rules of Civil Procedure.  *See Akkermansia*, 2023 WL 4015992, at *3-4 (applying Fed. R. Civ. P. 26 to discovery under § 1782); *Bayer*, 146 F.3d at 195 ("[U]nder ordinary circumstances the standards for discovery under [Federal Rules] should also apply when discovery is sought under [Section 1782].");  *In re Mota*, No. MC 19-00369, 2020 WL 95493, at *2 (D. Del. Jan. 8, 2020) (citing *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016)) ("[A]ssessment assessment of the fourth factor is virtually identical to the familiar "overly burdensome" analysis that is integral to the Federal Rules.").  Relevance in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."  Fed. R. Civ. P. 45, Advisory Committee's Note to 1970 Amendment.

In *Intel*, the Supreme Court stated that "unduly intrusive or burdensome requests may be rejected or trimmed."  542 U.S. at 265.  Requests are "unduly intrusive and burdensome where

they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *Sandra Hldg.*, 2019 WL 3072197, at *4 (quoting *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016)). In accordance with *Intel*, Applicants seeks leave to serve the document and deposition subpoenas addressing four main topic areas relevant to the UPC cases: (1) NST's litigation positions and related information bearing issues of patent claim scope, alleged infringement, and invalidity (Request for Production Nos. 1, 5, 6, 8; Deposition Topic Nos. 1, 3-5, 7, and 8); NST's ownership and standing to sue in the UPC (Request for Production Nos. 2-4 and 9; Deposition Topic Nos. 2 and 9); NST's claims for damages based on alleged infringement, and potential defenses such as license and implied license (Request for Production Nos. 7 and 10-13; Deposition Topic Nos. 6 and 10-12); and NST's status as a non-practicing, patent monetization entity, and ability to post a bond or satisfy a judgement of fees and costs (Request for Production Nos. 14, 18, and 19; Deposition Topic Nos. 13-16). As discussed above, *see supra* §§ III.B & IV.A, these topics are tailored specifically to relevant issues in the UPC litigations, including primarily issues of standing, infringement, validity, enforceability, and damages.

In this case, in particular, this discovery from NST and Thomas Loureiro creates no undue burden because it is *all* subsumed within the discovery NST must provide by court rule in its pending Texas litigations, which is much broader in scope. In particular, the Eastern District of Texas requires the parties in NST's litigations there to produce, "[w]ithout awaiting a discovery request, . . . all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in" the action. Ex. Q, § 3(b). "The Eastern District of Texas is well known for its liberal discovery policies and its high expectations that the parties and their counsel be forthcoming in their

discovery obligations." *Clear with Computers, LLC v. Hyundai Motor Am., Inc.*, 2011 WL 11562328, at *1 (E.D. Tex. July 5, 2011); *see also Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216-JRG, 2012 WL 12897921, at *3 (E.D. Tex. Oct. 19, 2012) (honoring a "commitment to broad and liberal discovery obligations"). As noted above, public records from NST's Texas litigations confirm that this discovery—from both NST and Thomas Loureiro—is being requested. Ex. L at 96:22-24; Ex. P at 2. For NST and Mr. Loureiro to provide a limited *subset* of this discovery to Applicants, they will suffer no undue burden. Indeed, NST and Mr. Louriero can hardly complain of undue burden since they chose to bring the UPC litigations against Applicants—litigations in which they are actively involved. Ex. N at 1.

Accordingly, the discovery Applicants seek is "all directly related to the claims asserted in the [UPC] litigation . . . [and] Section 1782 is thus an effective mechanism for obtaining the targeted discovery sought by" Applicants. *Thales Dis Air Deutschland*, 2021 WL 7707268, at *3. The Fourth *Intel* factor also supports granting this Application.

## V.    CONCLUSION

For the reasons discussed above, Applicants respectfully request that this Court enter the proposed order submitted concurrently with this filing pursuant to 28 U.S.C. § 1782(a), authorizing Applicants to obtain limited discovery from NST and Thomas Loureiro in substantially similar form as set forth in the proposed discovery requests attached to the Application as Exhibits A-D.

Dated: March 4, 2024

By: /s/ Adam S. Taylor
Adam S. Taylor (Bar No. 009078)
TAYLOR MCCORMACK &
FRAME, LLC
267 Commercial Street
Portland, ME 04101
Email: ataylor@tmfattorneys.com

Tel: 207-347-4265

*Attorney for Applicants*
*Volkswagen AG and Audi AG*